# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

DWAYNE MILLER,                          )
                                        )
            **Plaintiff,**          )
                                        )
v.                                      )    **Case No. 6:21-cv-03081-MDH**
                                        )
MICHELLE BUCKNER, et al.,               )
                                        )
            **Defendants.**         )

## ORDER

Before the Court is Defendants Michelle Buckner's, Michelle Kasak's, Troy Wade's, Donald Barton's, Christopher North's, Grant Frost's, William Thesson's, Kendra Cantrell's, Melissa Satterfield's, Pammy Bird's, Gregory Dugger's, Sean Bonner's, John Doe Holland's, Fredderick Wixom's, and Jeremy Robertson's (collectively, "State Defendants") Motion to Dismiss. (Doc. 7). The remaining Defendants in this case are "Pat Poe" numbered 1 through 40 whose identities or names are unknown. For the reasons set forth herein, the Motion is **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

Plaintiff Dwayne Miller filed his 42 U.S.C. § 1983 Complaint (Doc. 1) on April 8, 2021, naming, among others, State Defendants Buckner, Kasak, Wade, Barton, North, Frost, Thesson, Cantrell, Satterfield, Bird, Dugger, Bonner, Holland, Wixom, and Robertson, and suing each of them in their official and individual capacities. All named Defendants are either employees of the Department of Corrections of the State of Missouri and/or employees of South Central Correctional Center, where Miller is incarcerated.

1

Miller is an inmate in custody with the Missouri Department of Corrections at the South Central Correctional Center in Licking, Missouri. (Compl. ¶ 17). Miller claims under § 1983 that his constitutional rights were violated based upon acts of alleged deprivation of due process, cruel and unusual punishment, and race discrimination. (Compl. ¶¶ 1-12 & 143-67). Miller's claims arise from a conduct violation he received in response to receiving a controlled substance in the mail, resulting in Miller's placement in the Administrative Segregation ("AdSeg") unit of the prison. (Compl. ¶¶ 59-103). Miller alleges that Defendants imposed this conduct violation without producing any evidence that Miller did or said anything to cause an unknown person to send a substance to him, and Defendants destroyed the substance without it being confirmed as a controlled and illegal substance by the Highway Patrol laboratory or otherwise made available for third-party testing. (Compl. ¶¶ 1-2).

Miller alleges that his conditions in AdSeg violated his constitutional rights for reasons including, but not limited to, that he was deprived of his prescription eyeglasses and his Bible only while he was housed in AdSeg, his cell was "as cold as if he were outside,"[1] his cell was "filthy", the prisoners' food was "exposed to biologics posing health threats specifically including AIDS" because food carts were sometimes kept in the shower area, he had no privacy, and Defendant Wixom allegedly was seen "spitting around the food cart" on one occasion. (Compl. ¶¶ 80-102).

Miller's Complaint asserts four counts:

- Count I: Defendants Satterfield, Robertson, Cantrell, Hamby, Wade, North, Poe No. 1, Buckner, and Kasak deprived Miller of liberty without due process of law by causing and confirming a disciplinary finding with no evidence that he participated in any violation of institutional or department rules.
- Count II: Defendants Robertson, Cantrell, Hamby, Wade, North, Poe No. 1, Buckner, Kasak, Barton, Thesson, Frost, Dugger, Poe Nos. 2-11, Bonner, Holland,

---

[1] Although Miller briefly alleges it was cold in his housing unit, he did not provide any further details.

Case 6:21-cv-03081-MDH   Document 29   Filed 08/25/21   Page 2 of 12

Wixom, and Poe Nos. 12-30 violated the Cruel & Unusual Punishments Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment by placing and keeping (for approximately six months) the petitioner in Administrative Segregation (Housing Unit 2A) from December 18, 2019, to June 5, 2020, without some evidence that he committed the conduct violation signed by defendant Robertson, subjecting the plaintiff to an aggregation of conditions that was atypical and significant hardships compared with the ordinary incidents of prison life and went beyond a lawful sentence of imprisonment to subject him to disease, danger, indignity, and other wrongs that superadded cruelty to the here-unopposed fact of his imprisonment.

- Count III: Defendants Dugger, Poe Nos. 2-11, Bonner, Holland, Wixom, and Poe Nos. 12-30 violated the Cruel & Unusual Punishments Clause of the Eighth Amendment against the plaintiff during his confinement in Housing Unit 2A from December 18, 2019, to June 5, 2020, by personally subjecting the plaintiff to an aggregation of conditions that was atypical and significant hardships compared with the ordinary incidents of prison life and went well beyond a lawful sentence of imprisonment to subject him to disease, danger, indignity, and other wrongs that superadded cruelty to the here-unopposed fact of his imprisonment.

- Count IV: Defendants Robertson, Cantrell, Hamby, Wade, North, Poe No. 1, Buckner, and Kasak acted as they did toward the plaintiff in this case against several men at or about the same time, all of whom were African-American, while obtaining Highway Patrol testing and using less stringent sanctions in alleged conduct in violation of the same rule by nonminority prisoners, thereby violating the Equal Protection Clause of the Fourteenth Amendment.

Miller sues State Defendants in their official and individual capacities based on their positions at South Central Correctional Center and the Department of Corrections of the State of Missouri. (Compl. ¶¶ 18-56). Miller requests the Court award him compensatory damages of $1,000 per day and punitive damages of $10,000 per day that Miller was placed in AdSeg, injunctive relief that Miller's conduction violation be expunged, a declaratory judgment that

Miller's placement in Administrative Segregation offended the Eighth Amendment, and reasonable attorney's fees.

## STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *NEXTEP, LLC v. Kaba Benzing America, Inc.*, 2007 WL 4218977, *1 (E.D. Mo. 2007). When considering a 12(b)(6) motion, the factual allegations of a complaint are assumed true and are considered in the light most favorable to the plaintiff. *Id.* To avoid dismissal for failure to state a claim, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* This statement requires that the plaintiff give the defendant facts sufficient to give fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Id.* The court may dismiss the complaint when it is clear that no relief can be granted under any set of facts that could be proved consistent with the complaint. *See id.*

## DISCUSSION

### A. Count I

The foundation of Miller's allegations of due process violations against these State Defendants stems from Miller's receipt of a conduct violation and placement in Administrative Segregation for receiving a controlled substance in the mail. However, there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). There is also no violation of § 1983 for failing to follow prison policy or to process grievances. *Young v. Murphy*, 2018 WL 10320572, at *2 (W.D. Mo. Feb. 9, 2018).

4

Miller's complaint as to the process by which he received a conduct violation, including any violations of the prison grievance system or prison policy, is not a cognizable claim under § 1983. *See, e.g., Brown v. Richards*, 2018 WL 10400002, at *4 (W.D. Mo. Mar. 14, 2018) (Plaintiff's allegations failed to state a § 1983 claim when they were premised on failure to follow prison policy and respond favorably to Plaintiff's grievances); *Clark v. Webster*, 2006 WL 3206099, at *2 (W.D. Mo. Nov. 3, 2006) (Plaintiff's allegation that false disciplinary charges were filed against him and that he was put in segregation as a result of such charges, in violation of his due process rights, fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983); *Sanders v. Norris*, 153 F. App'x 403, 404 (8th Cir. 2005) ("Sanders alleged that he was found guilty of violating the prison's drug policy, after which his class status was reduced, he lost his prison job, and he was placed in punitive isolation for thirty days. The disciplinary conviction was later reversed. We agree with the district court that these allegations cannot form the basis for section 1983 relief").

Miller counters that when state actors subject a prisoner to punishment such as confinement in AdSeg for alleged violation of rules, they must have "some evidence" in support of the allegation. *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985) (adopting "some evidence" as the evidentiary test on judicial review for whether a prisoner may be officially punished consistently with the Due Process Clause of the Fourteenth Amendment). Miller briefly suggests that the Defendants alleged in Count I did not have "some evidence", but otherwise simply argues that Defendants should have been aware of the "some evidence" standard. Miller pleads that he received mail that contained a controlled substance (Compl. ¶ 59), which is certainly "some evidence" of a conduct violation.

5

Miller specifically complains that he was unable to verify with the Highway Patrol whether a test was conducted on the substance in question. As noted above, however, Miller does not have a constitutional right to have the controlled substances sent to a crime lab for further testing. As to the process by which he received a conduct violation, which would include any alleged violations of the prison grievance system or prison policy, Miller does not have a cognizable claim under § 1983. *See, e.g., Brown v. Richards*, 2018 WL 10400002, at *4 (W.D. Mo. Mar. 14, 2018) (Plaintiff's allegations failed to state a § 1983 claim when they were premised on failure to follow prison policy and respond favorably to Plaintiff's grievances); *Clark v. Webster*, 2006 WL 3206099, at *2 (W.D. Mo. Nov. 3, 2006) (Plaintiff's allegation that false disciplinary charges were filed against him and that he was put in segregation as a result of such charges, in violation of his due process rights, fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983); *Sanders v. Norris*, 153 F. App'x 403, 404 (8th Cir. 2005) ("Sanders alleged that he was found guilty of violating the prison's drug policy, after which his class status was reduced, he lost his prison job, and he was placed in punitive isolation for thirty days. The disciplinary conviction was later reversed. We agree with the district court that these allegations cannot form the basis for section 1983 relief"). Count I is therefore dismissed against all alleged Defendants in Count I.

## B. Count II

State Defendants contend that Miller fails to state a claim of cruel and unusual punishment and violation of the Due Process Clause against the Defendants alleged in Count II of the Complaint. Miller claims that these named State Defendants acted together to place Miller in Administrative Segregation in conditions that placed him in atypical and significant hardship. Miller was placed in administrative segregation for his conduct violation related to receiving a controlled substance in the mail. To determine whether confinement in administrative segregation

violates due process, the circumstances must constitute the type of atypical and significant hardship that would trigger the protection of the Due Process Clause. *See Sandin v. Conner*, 515 U.S. 472, 483 (1995).

The Due Process Clause does not give an inmate a liberty interest in remaining in the general population. *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995). Demotion to segregation, even without cause, is not itself an atypical and significant hardship. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). *See also Hemphill v. Delo*, 124 F.3d 208 (8th Cir. 1997) (4 days in lockdown, 30 days in disciplinary segregation, and 290 days in administrative segregation alone does not constitute an atypical and significant hardship). Miller spends much time dissecting the cases Defendants cite to argue that *maybe* the cases could be distinguished. Miller is correct that the particular facts presented in *Phillips*, for example, do not exactly match the facts pleaded in this case. Nevertheless, Miller cites to no authority that placing an inmate in AdSeg amounts to a due process violation, but rather points to numerous cases that support State Defendants' position and blankly asks the Court to find them invalid. As recognized above in the due process analysis regarding Count I, Miller fails to state a claim for a violation of the Due Process Clause by Defendants.

Miller also alleges his confinement in AdSeg violated his Eighth Amendment right to be free from cruel and unusual punishment. "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Brown v. Nix*, 33 F.3d 951, 955 (8th Cir. 1994). To establish that a prisoner's conditions of confinement violate the Eighth Amendment, the prisoner must show that (1) the alleged deprivation is, "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and (2) that the prison officials were deliberately indifferent to "an excessive risk to inmate health or safety," meaning that the officials

7

actually knew of and disregarded the risk. *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (citations omitted). Absent a showing that the prison officials consciously understood that prison conditions created such an excessive risk, the conditions are not a "punishment" within the meaning of the Eighth Amendment. *Id*.

The conditions complained of in Miller's Complaint—of which "spitting in the direction of prisoners' food" and "storage of food carts in a filthy shower" are specifically highlighted— certainly cannot be said to result in the denial of the minimal civilized measure of life's necessities as outlined by the Eighth Circuit. Miller also fails to adequately plead that State Defendants consciously understood that AdSeg conditions created an excessive risk to prisoners' health or safety and then disregarded such risk. Accordingly, Miller fails to state a claim for a violation of his Eighth Amendment rights in Count II. Count II is therefore dismissed against all Defendants alleged in it.

### C. Count III

Miller next brings a claim that some Defendants—separate from those alleged in Count II—also violated the Cruel and Unusual Punishments Clause of the Eighth Amendment against Miller based on the same alleged reasons and conditions that apply to Count II. As explained above, Miller has failed to state a claim for violations of his Eighth Amendment rights. Count III is therefore dismissed against all Defendants alleged in Count III.

### D. Count IV

#### a. Equal protection claim

Lastly, Miller argues that Defendants Robertson, Cantrell, Hamby, Wade, North, Poe No. 1, Buckner, and Kasak all engaged in conduct that violated the Equal Protection Clause of the Fourteenth Amendment. Specifically, Miller alleges that these Defendants subjected Miller and

several other African-American men to "substantially the same" treatment as Miller with respect to controlled substance violations and demotion to AdSeg, while nonminority prisoners accused of violating the same rule were treated significantly different. Specifically, Miller alleges that in the case of white inmates, Defendants sent the alleged controlled substances to the Highway Patrol Lab for scientific testing, withheld judgment until it was complete, and on finding a violation, inflicted a substantially less severe sanction. Specifically, Miller pleads:

> Defendants treated these African-American prisoners as presumptively guilty because one or more third parties addressed parcels to them that a preliminary test led an institutional investigator to call controlled, yielding approximately six months in Administrative Segregation, when a person they accorded treatment somewhere on a par to what they would expect themselves based on skin pigmentation—Mr. Owens—received Highway Patrol Lab testing (when there was phone monitoring evidence that he would receive the parcel in his case), and then sixty days in Administrative Segregation rather than six months.

(Compl. ¶ 165).

To establish an equal protection violation, a plaintiff must show that he is treated differently than a similarly situated class of inmates, that the different treatment burdens one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest. *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004). The mere unequal application of regulations does not provide an equal protection claim unless there is shown to be present in it an element of intentional or purposeful discrimination. *Cent. Airlines, Inc. v. United States*, 138 F.3d 333, 334-35 (8th Cir. 1998); *see also Snowden v. Hughes*, 321 U.S. 1, 8 (1944).

State Defendants argue that Miller has failed to establish that any inmates were treated differently because of their race and that merely observing the differences in inmate sanctions in relation to "perceived skin color" is not sufficient to establish discriminatory practices. Miller's recital of U.S. Census data and COVID-19 vaccination rates in the area of the prison where Miller is incarcerated does very little to bolster his equal protection claim. The Court agrees, however,

that the relevant information or data available to Miller without discovery is limited at this juncture, but Miller's pleadings raise a question that requires discovery to resolve.

### b. State Defendants may be held liable

State Defendants argue that they cannot be held liable for actions alleged in Miller's Complaint for several reasons. First, they argue that the Eleventh Amendment bars Miller's claims for monetary relief against State Defendants in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). The Eleventh Amendment bar is jurisdictional and applies regardless of whether the suit is for damages or for declaratory and injunctive relief. *Pennhurst*, 465 U.S. at 100-101. Eleventh Amendment immunity applies when state officials are sued for damages in their official capacity. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Miller does not contest that the Eleventh Amendment bars his prayers for monetary relief against State Defendants in their official capacities. Accordingly, Miller's claims for monetary damages against State Defendants in their official capacities are dismissed.

State Defendants also assert that they are protected from this suit in their individual capacities under the doctrine of qualified immunity. Qualified immunity provides governmental officials with immunity from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is immunity from suit rather than a mere defense of liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Whether the right at issue was "clearly established" is a question of law for the court to decide. *Wright v. United States*, 813 F.3d 689, 695-96 (8th Cir. 2015).

In *Anderson v. Creighton*, 483 U.S. 635 (1987), the Supreme Court explained:

Case 6:21-cv-03081-MDH   Document 29   Filed 08/25/21   Page 10 of 12

The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in light of pre-existing law, the unlawfulness must be apparent.

*Id*. at 640. The Court emphasized that this subjective legal reason test requires a "fact-specific inquiry." *Id*. at 641.

"It has been clearly established for many years that the Equal Protection Clause prohibits a State, when acting as employer, 'from invidiously discriminating between individuals or groups' based upon race." *Murphy v. State of Ark*., 127 F.3d 750, 755 (8th Cir. 1997) (citing *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976)). If, as Miller alleges, State Defendants purposefully discriminated against Miller because of his race, State Defendants would not be entitled to qualified immunity. Because the Court views the allegations in a plaintiff's complaint as true for the purposes of ruling on the instant Motion to Dismiss, the Court finds that State Defendants are not entitled to qualified immunity with respect to the claims in Count IV of Miller's Complaint.

Therefore, Count IV of Miller's Complaint is not entirely dismissed. Miller's claims for monetary damages against State Defendants in their official capacities are dismissed, but the remainder of Count IV survives this stage of litigation.

## CONCLUSION

For the foregoing reasons, State Defendants' Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**. The Motion is granted with respect to Counts I, II, and III. The Motion is also granted with respect to Plaintiff's claims for monetary damages against State Defendants in their official capacities in Count IV. The Motion is otherwise denied for the remainder of Count IV. Accordingly, all named Defendants are dismissed from the above-captioned case other than

those named in Count IV: Defendants Robertson, Cantrell, Hamby, Wade, North, Poe No. 1, Buckner, and Kasak.

**IT IS SO ORDERED.**

Dated: August 25, 2021                                    _/s/ Douglas Harpool_____
**DOUGLAS HARPOOL**
**United States District Judge**