IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DWAYNE MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:21-cv-03081-MDH |
| | ) |
| MICHELLE BUCKNER, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTION TO COMPEL

Before the Court is Pro Se Plaintiff's Amended Motion to Compel Discovery (Doc. 95). Following an order from this Court, Plaintiff clarified his motion. (Doc. 103). Defendants Robertson, Cantrell, Wade, North, Buckner, and Kasak (collectively "Defendants") responded to Plaintiff's initial Motion (Doc. 103) and to Plaintiff's clarification (Doc. 107). For reasons herein, Plaintiff's Amended Motion to Compel is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Plaintiff's complaint alleges Defendants and others violated Plaintiff's Constitutional rights and 42 U.S.C. § 1983. Plaintiff is currently incarcerated in the custody of the Missouri Department of Corrections ("DOC") at the South Central Correctional Center ("SCCC") in Licking, Missouri. (Doc. 1 at ¶ 17). Plaintiff's complaint lists a total of fifty-five defendants, all DOC employees or former employees. (Doc. 1 at 1-3). Plaintiff refers to forty defendants who presently remain unidentified as "Pat Poe," numbered one through forty. (Doc. 1 at 3). Plaintiff's claims arise from a conduct violation in response to receiving a controlled substance in the mail, resulting in Plaintiff's placement in SCCC's Administrative Segregation ("AdSeg") unit. (Doc. 1 at ¶ ¶ 59-103). Specifically, Plaintiff's conduct violation indicated Plaintiff violated DOC Rule

1

11.2, which prohibits involvement with an "agreement, scheme, or plan to introduce a controlled substance or intoxicant into a department facility." (Doc. 1 at ¶ 59). Plaintiff alleges Defendants imposed this conduct violation without producing evidence Plaintiff did or said anything to cause an unknown person to send a substance to him, and Defendants destroyed the substance without it being confirmed as a controlled and illegal substance by the Highway Patrol laboratory or otherwise made available for third-party testing. (Doc. 1 at ¶ ¶ 1-2). This Court previously dismissed Counts One, Two, and Three of Plaintiff's complaint pursuant to a 12(b)(6) motion. (Doc. 29). The only remaining count is Count Four, which alleges in part the following.

> Defendants Robertson, Cantrell, Hamby, Wade, North, Poe No. 1, Buckner, and Kasak acted as they did toward the plaintiff in this case against several men at or about the same time, all of whom were African-American, while obtaining Highway Patrol testing and using less stringent sanctions in alleged conduct in violation of the same rule by nonminority prisoners, thereby violating the Equal Protection Clause of the Fourteenth Amendment. (Doc. 1 at 29).

Plaintiff's complaint requests compensatory damages of $1,000 per day and punitive damages of $10,000 per day that Plaintiff was placed in AdSeg, injunctive relief that Plaintiff's conduction violation be expunged, a declaratory judgment that Plaintiff's placement in Administrative Segregation offended the Eighth Amendment, and reasonable attorney's fees.

## STANDARD

Trial courts have broad discretion in settling discovery disputes. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 381 (8th Cir. 1992). Federal Rule of Civil Procedure 26 guides the scope of discovery. The rule states the following.

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

2

Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1).

In resolving discovery disputes, the burden is initially on the requesting party to make a threshold showing of relevance. *Burke v. Ability Ins. Co.*, 291 F.R.D. 343, 349 (D.S.D. 2013). "While the standard of relevance in the context of discovery is broader than in the context of admissibility… this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery." *Hofer* at 380. Assuming relevance, then the burden shifts to the resisting party to show the request is irrelevant, unduly burdensome, overly broad, or otherwise improper. *Carlton v. Union Pac. R. Co.*, No. 8:05CV293, 2006 WL 2220977, at *2 (D. Neb. Aug. 1, 2006). The resisting party must do this by laying out specific facts, rather than claiming irrelevance or overbreadth in conclusory, boilerplate fashion. *St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000).

## DISCUSSION

At the outset, this Court notes Plaintiff has failed to comply with Local Rule 37.1. Pursuant to Local Rule 37.1, parties must attempt to resolve discovery disputes on their own before requesting Court intervention. If the issue remains unresolved after a good faith effort to confer, parties must arrange a telephone conference with the Court. Only after such a conference can a written discovery motion be filed. While Plaintiff failed to seek a telephone conference, this Court recognizes compliance with Local Rule 37.1 may place a unique burden on Plaintiff, who remains pro se and incarcerated in DOC custody.

Plaintiff requests this Court enter an order compelling Defendants to disclose seventeen categories of documents. Specifically, Plaintiff requests the following. (Docs. 95-1 and 103).

1. All Rule 11.2 conduct violations issued in the past five years.
2. All Rule 11.2 Corrective Action Reports in the past five years.

3. All 11.2 Extension of Time spent in Ad Seg in the past five years.
4. All Missouri Highway Patrol Crime Laboratory reports confirming or disconfirming the results of the preliminary field test received within the past five years.
5. Any record of decision to seek a confirmatory report from the Missouri Highway Patrol Crime Laboratory after the preliminary field test indicates a positive result for a controlled substance, including documents approving such decisions.
6. Any records of decisions not to seek a confirmatory report from the Missouri Highway Patrol Crime Laboratory after the preliminary field test indicates a positive result for a controlled substance, including documents approving such decisions.
7. Any documents setting forth the procedures defendant Cantrell used in performing the preliminary field tests on the parcels received in plaintiff's and Messrs. Brown's, Eave's, Jackson's, and McCall's cases, documented (sic) of the steps taken and materials used in process, and specifications of any equipment used in performing it, and all documentation from the manufacturer of the equipment including acknowledgments of the limitations of the reliability of the results of the process.
8. All documents reporting, recognizing, or correcting false positives (reports presence of a controlled substance when subsequent crime lab or other more thorough testing or examination showed otherwise) from the preliminary field test in reliance on which defendants accused Plaintiff and Messrs. Brown, Eaves, Jackson, and McCall of violating Rule 11.2, found them guilty, committed us to Ad Seg, and extended their time to approximately six months.
9. All documents sent to or received by any defendant in this civil action (EDF#1:1-3&7-12) in relation to the charges, testing or non-testing of purported evidence, findings of conduct violations, sanctions, and/or extension of sanctions of the plaintiff and Messrs. Brown, Eaves, Jackson, and McCall for allegedly violating Rule 11.2.
10. Any documents directing or recording the decisions not to send to the Highway Patrol Crime Lab the materials subjected to preliminary field tests involved in the charges against the plaintiff and Messrs. Brown, Eaves, Jackson, and McCall for allegedly violating Rule 11.2.
11. Any documents directing or recording the decisions to send the Highway Patrol Crime Lab the materials subjected to preliminary field tests involved in the charges against Mr. Orien A. Owens and/or Mr. Leonard Elliott for allegedly violating Rule 11.2.
12. Any documents directing or recording the decisions to destroy the materials subjected to preliminary field tests involved in the charges against the plaintiff and Messrs. Brown, Eaves, Jackson, and McCall for allegedly violating Rule 11.2.
13. All documents reflecting the nature and cause of the separation of defendant Robertson from service at SCCC.
14. Any document generated or received in the ten years before service of this document production request on any official, officer, employee, or contractor at SCCC reflecting membership in or affiliation with the Ku Klux Klan, QAnon, a neo-Nazi organization, the Proud Boys, the Oath Keepers, or other hate, white-supremacist, white-nationalist, anti-Semitic, or domestic terrorist group.
15. Any document reflecting any investigation of the grievance denial that the plaintiff filed, which denial you approved on April 2, 2020 (ECF#1-7).
16. Any document instruction, suggesting or otherwise influencing LeAnn Schults to request a pending court case number from this plaintiff's counsel to receive an unmonitored call

  from any prisoner that was generated or delivered to Ms. Schults after this plaintiff's counsel filed the pending civil action.
17. Any document on which rely in asserting that pre-existing authority requiring a pending court case number from this plaintiff's counsel to receive an unmonitored call from any prisoner was a legitimate, non-retaliatory gesture when it was not done until after this plaintiff's counsel filed the pending civil action, which he had developed using multiple, unmonitored calls from prisoners at SCCC over beginning in late 2019 but was not asked for a pending court case number until he had filed a case.

Defendants indicate they provided Plaintiff via mail with all documents responsive to numbers fifteen, sixteen, and seventeen during April 2022. (Docs. 100 at 7 and 107 at 5). As to numbers nine and twelve in Plaintiff's request, Defendants indicate these documents are considered confidential and therefore cannot be mailed to Plaintiff like other documents. (Doc. 107 at 4). Through briefing and attached communication from SCCC Deputy Warden Wendall Calhoun, Defendants claim they made these documents available to Plaintiff for review at SCCC. (Doc. 107 at 4 and 107-1). Defendants indicate the review was scheduled for July 18, 2022, at which time Plaintiff was asked to sign a receipt indicating he had the opportunity to view the documents. (Doc. 107 at 4). Defendants state Plaintiff refused to sign the receipt and therefore the discoverable documents were not made available for Defendant to view. (Doc. 107 at 4). The documents remain available for Plaintiff to view, conditioned on Plaintiff's signing a receipt indicating he had an opportunity to view the documents. (Doc. 107 at 4).

 As to numbers four, five, six, seven, eight, ten, eleven, twelve, and fourteen, Defendants indicate they lack responsive documentation. (Doc. 100 at 5-7 and 107 at 2-3). As to Plaintiff's specific requests pertaining to records from Missouri Highway Patrol, Defendants direct Plaintiff to seek these records directly from the Missouri Highway Patrol, as these records would not be within the custody of the Missouri Department of Corrections. (Doc. 107 at 2). Plaintiff indicated he has sought and obtained some of these records directly from the Missouri Highway Patrol via

a Sunshine Request. (Doc. 114). The substance of the discovery dispute between the parties appears to focus on Plaintiff's first, second, third, and thirteenth requests for production.

I. **Plaintiff's First, Second, and Third Requests for Production**

As to Plaintiff's first, second, and third requests, Defendants argue the request is vague, ambiguous, overly broad, and unduly burdensome. (Doc. 100 at 3). In support, Defendants argue DOC does not keep records of the frequency of a particular type of violation. (Docs. 100 at 3-4 and 107 at 1-2). Rather, violation records follow individual inmates. (Docs. 100 at 3-4 and 107 at 1-2). In other words, there is no way for DOC staff to search records based on a particular type of violation. Staff must comb through files of individual inmates and identify whether that inmate's record shows he or she violated a particular rule. Complicating matters, Defendants argue, is that these files are maintained in hardcopy and follow inmates from one facility to the next, as inmates transfer throughout the DOC system. (Docs. 100 at 3-4 and 107 at 1-2). In effort to lighten the burden, Plaintiff offered to shorten the requested period from five years to two years. (Doc. 100-1). Defendants indicated this does not meaningfully reduce the burden, especially given SCCC usually houses no fewer than 1,500 inmates, with inmate transfers weekly and releases daily. (Docs. 100 at 3-4 and 107 at 1-2). Defendants also argue Plaintiff's request under numbers one, two, and three, concerns portions of offenders' records constituting internal reports relating to institutional security, which are specifically "closed" per Missouri statute. (Docs. 100 at 3-4 and 107 at 1-2).

Plaintiff's briefing does not explicitly lay out specific reasons as to why the documents under Plaintiff's first, second, and third requests are relevant. The relevance, however, is sufficiently plain, given Fed. R. Civ. Pro. Rule 26's breadth. *Burke v. Ability Ins. Co.*, 291 F.R.D. 343, 348 (D.S.D. 2013) ("The scope of discovery under Rule 26(b) is extremely broad"). DOC

6

Rule 11.2 prohibits inmates from any involvement in a scheme to introduce a controlled substance into a DOC facility. (Doc. 1 at ¶ 59). General information concerning Rule 11.2 enforcement may reasonably shed light on discriminatory patterns, the general theme of Plaintiff's argument under Count Four.

Defendants adequately lay out specific facts showing how Plaintiff's request is unduly burdensome. Rather than a mere recitation of boilerplate language, Defendants' briefing sufficiently shows how DOC recordkeeping prevents a search based on a particular type of violation. (Docs. 100 at 3-4 and 107 at 1-2). Defendants explain how fulfillment of Plaintiff's request would require DOC staff to identify the thousands of inmates in DOC custody during the relevant period, locate the hardcopy files for these defendants from various DOC facilities, and then perform a manual search of the records in effort to locate evidence of a Rule 11.2 violation. (Docs. 100 at 3-4 and 107 at 1-2). Defendants also object to the production of these documents based on their relationship to institutional security. (Docs. 100 at 3-4 and 107 at 1-2). Even if redacted, a significant safety concern arises by providing Plaintiff, a current DOC inmate, with documents detailing investigations into other inmates alleged to have participated in schemes to bring controlled substances into DOC facilities. Further, Plaintiff's first, second, and third requests are disproportional to the remaining claim. Plaintiff does not appear to limit his requests to violations at SCCC, nor does he limit his requests to enforcement of Rule 11.2 by only those prison guards listed as defendants in Count Four. As written, Plaintiff's request seeks copies of all Rule 11.2 violations enforced by any DOC employee throughout a two-year period, far beyond the scope of Plaintiff's Count Four claim. Plaintiff's Motion to Compel is denied as to the first, second, and third items requested.

## II. Plaintiff's Thirteenth Request for Production

Defendants object to producing documents showing reasons why Defendant Robertson is no longer employed with DOC. (Doc. 107 at 4). Defendants specifically acknowledge Defendant Robertson has a personnel file, but Plaintiffs argue simply that Missouri statute dictates that Defendant Robertson's personnel file remain closed and confidential. (Doc. 100 at 6). Defendants further argue that Plaintiff's belief that Defendant Robertson, "was removed from service for destroying evidence is not sufficient for these files to lose their confidentiality." (Doc. 107 at 4). Defendants to not argue Defendant Robertson's personnel file is privileged.

Relevance of Defendant Robertson's personnel file is sufficiently clear. Plaintiff lists Defendant Robertson as a defendant under Count Four. (Doc. 1 at 29). Plaintiff alleges Defendant Robertson was responsible for initially issuing the DOC Rule 11.2 conduct violation report against Plaintiff. (Doc. 1 at ¶ 59). Plaintiff also alleges, and Defendants do not deny, Defendant Robertson is no longer employed with DOC. (Doc. 1 at ¶ ¶ 46, 47). Plaintiff alleges a discriminatory animus on the part of Defendant Robertson. (Doc. 1 at ¶ ¶ 158-167). Plaintiff also claims Defendant Robertson was removed from his DOC post because he destroyed evidence of drug crimes inside prison. (Doc. 103 at 6).

Apart from a boilerplate confidentiality claim, Defendants fail to articulate specific facts showing why Defendant Robertson's personnel file is not subject to production. On the other hand, production of a former prison guard's personnel file to a current inmate may reasonably pose a safety risk. Personnel files also likely contain information irrelevant to the issues underlying this dispute. The Eighth Circuit appears to have addressed a related issue. In *Williams v. Mensey*, the Eighth Circuit upheld a trial court's decision to review in camera personnel files of prison guard defendants to determine discoverability prior to trial on § 1983 claims brought by inmates.

*Williams v. Mensey*, 785 F.2d 631, 636-37 (8th Cir. 1986). Accordingly, this Court orders Defendants to provide a copy of Defendant Robertson's personnel file to this Court for in camera review to determine whether any information contained within is discoverable under Fed. R. Civ. Pro. Rule 26.

## CONCLUSION

For foregoing reasons, Plaintiff's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Motion to Compel is **DENIED** as to Plaintiff's first, second, and third requests for production. Plaintiff's Motion to Compel **GRANTED** as to Plaintiff's thirteenth request for production. Specifically, Defendants are **ORDERED** to provide a copy of Defendant Robertson's personnel file to the Court for in camera review no later than December 31, 2022. The Court will then make a determination about the discoverability of Defendant Robertson's personnel file.

**IT IS SO ORDERED.**

Dated: December 12, 2022  /s/ Douglas Harpool
**DOUGLAS HARPOOL**
**United States District Judge**