IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DWAYNE MILLER, | ) |
|        Plaintiff, | ) |
| v. | ) Case No. 6:21-cv-03081-MDH |
| MICHELLE BUCKNER, et al., | ) |
|        Defendants. | ) |

## ORDER

Before the Court is Defendants Robertson, Cantrell, Hamby, Wade, North, Poe No. 1, Buckner, and Kasak's (collectively "Defendants'") Motion for Summary Judgment. The matter is fully briefed and ripe for review. For reasons herein, Defendants' Motion is **GRANTED**. Summary judgment is entered in favor of Defendants.

## BACKGROUND

Plaintiff Dwayne Miller ("Plaintiff") filed his 42 U.S.C. § 1983 Complaint (Doc. 1) on April 8, 2021, naming, among others, Defendants Buckner, Kasak, Wade, Barton, North, Frost, Thesson, Cantrell, Satterfield, Bird, Dugger, Bonner, Holland, Wixom, and Robertson, and suing each of them in their official and individual capacities. All named Defendants are either employees of the Department of Corrections of the State of Missouri and/or employees of South Central Correctional Center ("SCCC"), where Plaintiff is incarcerated. This court previously granted in part Defendants' Motion to Dismiss (Doc. 29). Pursuant to that order, Counts One, Two, and Three of Plaintiff's complaint were dismissed in their entirety as well as Plaintiff's claims for monetary damages against Defendants in their official capacities in Count IV. Therefore, the only remaining claim is Count Four's equal protection allegation seeking non-monetary damages against

1

Defendants Robertson, Cantrell, Hamby, Wade, North, Poe No. 1, Buckner, and Kasak, the only defendants Plaintiff specifically implicates in his Count Four allegations. [1]

Plaintiff is an inmate in custody with the Missouri Department of Corrections at the SCCC facility in Licking, Missouri. (Doc. 1 at ¶ 17). Plaintiff's § 1983 equal protection claim arises from a conduct violation he received in December 2019 in response to receiving a controlled substance in the mail, resulting in Plaintiff's placement in the Administrative Segregation unit of the prison between December 2019 and June 2020. (Doc. 1 at ¶¶ 59-103). The specific Department of Corrections rule Plaintiff was found to have violated is 11.2, which broadly prohibits any involvement with an agreement to introduce a controlled substance into a Department of Corrections facility. Plaintiff alleges that Defendants violated Plaintiff's equal protection rights in two ways. First, Plaintiff argues that Defendants violated equal protection rights because they failed to seek confirmatory testing at an outside laboratory of the heroin seized in the mail sent to Plaintiff because Plaintiff is Black. Second, Plaintiff argues Defendants violated Plaintiff's equal protection rights because he was punished more severely than other similarly-situated white inmates who violated rule 11.2. Plaintiff requests injunctive relief in the form of expungement of the violation record, a declaratory judgment that Plaintiff's placement in Administrative Segregation offended the Constitution, and reasonable attorney's fees.

---

[1] Plaintiff was represented by counsel at the motion to dismiss stage, but this Court permitted Plaintiff's counsel to withdraw in the interim. For purposes of responding to Defendants' Motion for Summary Judgment, Plaintiff has represented himself *pro se*. This Court has remained cognizant of Plaintiff's *pro se* status and has showed leniency accordingly.

## STANDARD OF REVIEW

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The moving party may also satisfy its burden on summary judgment by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The Supreme Court has also held that the standard for granting summary judgment is functionally indistinguishable from the standard required for directed verdict at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986) ("the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.")

# ARGUMENT

Defendants' Motion for Summary Judgment raises three substantive points: 1) Plaintiff lacks evidence to support his equal protection claim; 2) Plaintiff's Count Four allegations entirely fail to implicate Defendant Kasak; 3) Defendants are entitled to qualified immunity. The Court will address each of these arguments in turn.

### I. Plaintiff lacks evidence to support his Count Four equal protection claim

Defendants first argue that Plaintiff lacks evidence to support his remaining equal protection claim. Specifically, Defendants argue, "Plaintiff's only evidence is that some tests were sent to the Highway Patrol and that some were not. There is nothing to indicate whether all drug tests on behalf of African-American inmates were not sent to the Highway Patrol lab and vice-versa. There is nothing to show that there was any type of purposeful discrimination." (Doc. 121 at 5). Though somewhat unclear, *Pro Se* Plaintiff in response generally repeats allegations of equal protection violations contained within the complaint.

The Fourteenth Amendment of the United States Constitution works to ensure that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Eighth Circuit has held that the "Fourteenth Amendment requires that the government treat similarly situated people alike, a protection that applies to prison inmates." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004) (citations omitted). "Unequal treatment of those who are entitled to be treated alike [ ] is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015) (citations omitted). The Supreme Court has clarified that "the good faith of officers [accused of equal protection violations] and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party."

4

*Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 353 (1918). When assessing whether to enter summary judgment in favor of a defendant on an equal protection claim, the Plaintiff must "identify affirmative evidence from which a jury could find [proof of] the pertinent motive, race discrimination." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (citations omitted).

A close review of the record shows Plaintiff generally lacks documentary evidence not only of disparate treatment of prisoners based on race, but that any such treatment reflects intentional conduct on the part of Defendants. Plaintiff attached various exhibits to his response in opposition to Defendants' Motion for Summary Judgment. This documentary evidence, however, fails to illuminate any purposeful, disparate treatment of Plaintiff based on race. Plaintiff attaches, for example, many lab reports from the Missouri State Highway Patrol ("MSHP") reflecting analysis completed on suspected controlled substances. Though unclear, it appears Plaintiff has included these reports in attempt to show some, but perhaps not all, suspected narcotics seized within SCCC receive follow-up confirmatory testing from the MSHP. Even if that were true, Plaintiff has failed to include evidence that shows Defendants have purposefully shown greater leniency toward certain inmates based on those inmates' race. Put differently, Plaintiff fails to provide evidence showing the MSHP reports somehow evidence a choice on the part of Defendants to seek a confirmatory test on substances seized from inmates from only some racial groups and not others.

Plaintiff also offers affidavits from fellow inmates who claim they personally have been subjected to disparate treatment because of race. Fellow inmate Nathan Allen, for example, claims he generally received more severe punishment than other inmates because of his race. (Doc. 130-8 at 1). Mr. Allen also claims Defendant Cantrell failed to submit narcotics for additional testing after a field test. Mr. Allen, however, fails to specify how or by whom he has been punished

disparately because of his race. Plaintiff also fails to explain how Mr. Allen's claims about Defendant Cantrell relate to Plaintiff's Count Four allegations about how Defendants treated Plaintiff himself disparately. Without more evidence or argument, it is impossible to understand with any certainty how Mr. Allen's affidavit, which contains merely conclusory allegations, moves forward Plaintiff's Count Four claims about equal protection. Plaintiff's exhibits also include a second affidavit from Mr. Cornell Manley, another SCCC inmate, which claims "only the African-Americans are being punished for the false allegations of the false field testing." (Doc. 130-9 at 1). Claims in Mr. Manley's affidavit are likewise conclusory and altogether fail to implicate Defendants. Further, affidavits submitted by Plaintiff fail to indicate that any alleged disparate treatment stems from an intentional or purposeful act on the part of Defendants.

Plaintiff also includes a document titled "Missouri Department of Corrections Department Procedure Manual." (Doc. 130-21). This document appears to identify "guidelines for conducting various types of drug tests." (Doc. 130-21). This document indicates that when initial, on-site testing indicates the presence of a controlled substance, a confirmatory test from another facility is required before any inmate will be issued a conduct violation. (Doc. 130-21). To the extent the guidelines within this manual reflect official Department of Corrections policy, it would appear failure to seek confirmatory testing from another off-site facility before issuing a conduct violation would violate policy. Violation of Missouri Department of Corrections policy alone, however, fails to give rise to a constitutional claim.

The record evidence perhaps most supportive of Plaintiff's claims comes from Defendants themselves, who submit an accounting of all inmates who have violated Rule 11.2 at SCCC from January 1, 2017 until February 9, 2022.[2] (Doc. 120-4 at 14-61). A close review shows a total of

---

[2] Defendants' response (Docs. 100, 107) to Plaintiff's Motion to Compel argued that it was impossible to provide Plaintiff with evidence of the number of times a specific Department of Corrections rule had been

6

Case 6:21-cv-03081-MDH   Document 133   Filed 05/10/23   Page 6 of 10

ninety-eight Rule 11.2 violations during the relevant period, corresponding to thirty-seven violations from white inmates, fifty-nine violations from Black inmates, and two violations from inmates of other races. (Doc. 120-4 at 14-61). While this clearly indicates an unequal outcome based on race, the record lacks evidence showing this is disproportionate to the overall population housed within SCCC during the relevant period. Evidence of the race of every Rule 11.2 violator without more also fails to show any discriminatory intent or purpose on the part of Defendants. While Department of Corrections records show more Black SCCC inmates have been charged with a Rule 11.2 violation than white inmates, the discrepancy—fifty-nine versus thirty-seven— is not significant enough to allow this Court to conclude automatically that the discrepancy reflects an intentional or purposeful act on the part of Defendants. This accounting of violations also fails to describe the testing methods utilized to determine the presence of any controlled substance, the crux of Plaintiff's equal protection allegation. In other words, while this accounting of 11.2 violations may illuminate differences in enforcement generally, it fails to offer insight into Plaintiff's specific claims about disproportionate testing methods based on inmate race. Nor does it speak to any differences in punishment for rule 11.2 violation based on race.

Further, and perhaps most importantly, Defendants have also included a Suspicious Activity Report from the Missouri Department of Corrections Intelligence Unit, which shows that Plaintiff spoke with Eugene Martin, a former SCCC inmate now living in Arlington, Texas, about sending heroin through the mail into SCCC. (Doc. 120-5). Interception of these phone calls by Department of Corrections staff appears to have informed investigation of the United States mail

---

violated due to limits associated with the Department of Corrections' data management system. Defendants' exhibit, however, appears to be just that: an accounting of the number of times inmates at SCCC violated Rule 11.2. This specific exhibit appears to have been previously provided to Plaintiff in response to interrogatories, calling into question the need for this argument in Plaintiff's Motion to Compel as well as Defendants' response.

7

Plaintiff received with an Arlington, Texas postmark and no return address. This mail later tested positive for heroin during a field test. The content of the intercepted phone calls appears to strongly support a claim that the decision to forego any confirmation test lies with the presence of corroborating evidence that the seized substance was in fact heroin, rather than Plaintiff's race.

Even drawing all reasonable conclusions in Plaintiff's favor, this Court agrees with Defendants that the record lacks sufficient evidence to show that the reason for any decision to forego confirmatory testing related to Plaintiff's race. Similarly, insufficient evidence shows Plaintiff was punished disparately compared to other similarly situated inmates. Plaintiff's complaint acknowledges that his Count Four claims were weak without the benefit of discovery. "Although the dataset available to Plaintiff without discovery is limited, it raises a question that requires discovery to resolve. But it would be naïve to write off this disparate treatment as a coincidence." (Doc. 1 at ¶ 164). It now appears even the benefit of discovery has proven insufficient to assist Plaintiff in establishing evidence to show that Defendants have treated Plaintiff disparately based on Plaintiff's race. Accordingly, Plaintiff's Count Four allegations are dismissed in their entirety against Defendants.

### II. Plaintiff's Count Four allegations fail to implicate Defendant Kasak

Plaintiff includes Defendant Kasak among those people implicated in Count Four's equal protection allegations. (Doc. 1 at 29). Per Plaintiff's complaint, Defendant Kasak was employed as the deputy director of the Division of Adult Institutions at the Missouri Department of Corrections during all relevant times. (Doc. 1 at ¶ 22). Plaintiff's complaint alleges that Defendant Kasak denied Plaintiff's appeal of a grievance denial following Plaintiff's appeal of his Rule 11.2 violation. (Doc. 1 at ¶ 139). Plaintiff does not contend Defendant Kasak was involved with the decision to forego any confirmatory testing of heroin mailed to Plaintiff, nor does Plaintiff contend

that Defendant Kasak was involved in any way with Plaintiff's punishment following violation of Rule 11.2. In other words, apart from Defendant Kasak's name in the heading of Count Four, the record lacks argument or evidence that Defendant Kasak is in any way associated with the specific acts that form the basis of the allegations in Count Four. As Defendants argue, plaintiffs are required to show personal involvement from each named defendant on any § 1983 claim. *White v. Jackson*, 865 F.3d 1064, 1080 (8th Cir. 2017). Accordingly, Plaintiff's remaining Count Four is dismissed in its entirety against Defendant Kasak.

### III. Defendants are entitled to summary judgment

The Supreme Court has held, "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013). A right is clearly established when the "contours of the right [are] sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, "in the light of pre-existing law the unlawfulness must be apparent." *Id*. (citations omitted). "Summary judgment should be granted on qualified immunity grounds "if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact ... violated clearly established law."
*Griffin v. Lombardi*, 946 F.2d 604, 607 (8th Cir. 1991) (citations omitted).

Defendants argue they are entitled to qualified immunity, as Plaintiff has failed to show any violation of a clearly established right. Specifically, Plaintiff cannot establish Defendants treated Plaintiff differently than similarly situated people based on Plaintiff's race. (Doc. 121 at 8). This Court agrees. As discussed before, Plaintiff lacks evidence that Defendants treated Plaintiff any differently because of his race. Though Defendants may have violated Department of Corrections policy by foregoing confirmatory testing of heroin seized from an envelope mailed to Plaintiff, there is no evidence this rises to the level of a constitutional violation. Accordingly, Defendants have not violated any right that was clearly established at the time of the alleged conduct and are therefore entitled to qualified immunity.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment is **GRANTED**. Summary judgment is entered in favor of Defendants.

**IT IS SO ORDERED.**

Dated: May 10, 2023                                    */s/ Douglas Harpool*
                                                                                    **DOUGLAS HARPOOL**
                                                                                    **United States District Judge**